UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANNA M. S.,

                            Plaintiff,

                                                                3:19-CV-0367
v.                                                              (GTS)

ANDREW M. SAUL, Commissioner of
Social Security,

                            Defendant.
_____

APPEARANCES:                              OF COUNSEL:

AVARD LAW                                 CRAIG POLHEMUS, ESQ.
  Counsel for Plaintiff
P.O. Box 101110
Cape Coral, FL 33910

SOCIAL SECURITY ADMINISTRATION            SEAN SANTEN, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I        Special Assistant U.S. Attorney
  Counsel for Defendant
625 JFK Building
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Anna M. S. ("Plaintiff") against the

Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. § 405(g) and 1383(c)(3),

are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for

judgment on the pleadings.  (Dkt. Nos. 12, 14.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is denied and Defendant's motion for judgment on the

pleadings is granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1979, making her 36 years old at her date last insured and 38 years old at the date of the ALJ's decision.  Plaintiff reported having a tenth grade education with a history of special education, and that she had worked in the past as a cashier.  In her application, Plaintiff alleged disability due to bipolar disorder, sleep apnea, a mass on her brain, a congenital heart defect, and headaches.

### B.     Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on April 14, 2015, alleging disability beginning January 1, 2015.  Plaintiff's application was initially denied on August 19, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ John P. Ramos on October 12, 2017; the ALJ gave her the option to postpone the hearing in order for her to have an opportunity to obtain representation, but Plaintiff chose to proceed without representation.  On November 14, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 10-20.) [1]  On September 4, 2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and

---

[1]     The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

conclusions of law.  (T. 10-20.)  First, the ALJ found that Plaintiff was insured for benefits under Title II until December 31, 2015.  (T. 13.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application filing date.  (T. 13.)  Third, the ALJ found that Plaintiff's obesity, history of congenital heart disease, history of headaches, posttraumatic stress disorder ("PTSD"), depressive disorder, and bipolar disorder are severe impairments, while her sleep apnea is not a severe impairment.  (T. 13.)  Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically, the ALJ considered Listings 4.06, 12.04, 12.06, and 12.05.  (T. 14.)  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine; and maintain a schedule.  She can relate to and interact with others to the extent necessary to carry out simple tasks and she can handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

(T. 15.)  Sixth, the ALJ found that Plaintiff does not have past relevant work.  (T. 19.)  Seventh, the ALJ found that Plaintiff is not disabled because she remains able to perform unskilled sedentary work and, because her additional nonexertional limitations have little to no effect on the occupational base of unskilled sedentary work, testimony from a vocational expert was not required to make that finding.  (T. 19.)  The ALJ therefore concluded that Plaintiff is not disabled.

D.     **The Parties' Briefing on Their Motions**

1.     **Plaintiff's Motion for Judgment on the Pleadings**

Generally, in her memorandum of law, Plaintiff asserts four arguments.  (Dkt. No. 12, at

11-22 [Pl.'s Mem. of Law].)  First, Plaintiff argues that she did not receive a fair hearing because

she did not make an effective and valid waiver of counsel.  (*Id.* at 11-15.)  More specifically,

Plaintiff argues that (a) the written notices that were provided to her and the notice given by the

ALJ at the hearing did not give her information regarding the benefits of having counsel, and (b)

there was evidence that Plaintiff might have limited intellectual functioning (including

difficulties with reading), which suggests that her waiver of counsel might not be valid.  (*Id.*)

Plaintiff argues that this error is not harmless because there are gaps in the record that could have

been remedied by the presence of an attorney, in particular the ALJ's failure to probe sufficiently

into information about all of her impairments while taking her testimony at the hearing.  (*Id.*)

Second, Plaintiff argues that the ALJ erred in finding that her nonexertionl limitations

(i.e., the various ways in which the ALJ found that she is limited to simple work tasks) had little-

to-no effect on the occupational base of unskilled sedentary work and consequently failed to

consult a vocational expert when determining there was a significant number of jobs in the

national economy that she could perform.  (*Id.* at 15-17.)  More specifically, Plaintiff argues that

(a) unskilled work encompasses multiple "reasoning levels" as defined in the Dictionary of

Occupational Titles ("DOT") and some of those reasoning levels are inconsistent with the

limitations imposed by the ALJ, and (b) the DOT also contains General Education Development

specifications related to language and writing fluency required in a job, and, based on the

evidence that Plaintiff has difficulty reading, she would not be able to perform certain unskilled

occupations that require higher reading levels.  (*Id.*)  Plaintiff therefore argues that, because there are unskilled sedentary jobs that she would not be able to perform based on these reasoning and reading specifications, the ALJ was required to consult a vocational expert.  (*Id.*)

Third, Plaintiff argues that the ALJ erred in finding that she could relate to and interact with others to carry out simple tasks.  (*Id.* at 17-18.)  More specifically, Plaintiff argues that both the consultative examiner and her treating therapist found that she had significant limitations in that aspect of her functioning, and that the ALJ failed to provide any reason for failing to adopt the consultative examiner's marked limitation in her ability to relate to and interact with others. (*Id.*)  Plaintiff argues that the ALJ's findings are therefore unsupported by substantial evidence in this respect.  (*Id.*)

Fourth, Plaintiff argues that she is entitled to a new hearing before a different ALJ because ALJ Ramos was not constitutionally appointed to his position at the time he rendered a decision on her application.  (*Id.* at 19-22.)  More specifically, Plaintiff cites *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), in which, she argues, the Supreme Court held that decisions by ALJs who were not properly appointed under the Appointments Clause of the United States Constitution must be reversed and remanded, and argues that the Social Security Administration subsequently admitted that its ALJs were not properly appointed until it took action to do so on July 16, 2018. (*Id.*)  Plaintiff argues that, because her hearing and decision occurred before the ALJs were properly appointed, her application must be remanded to be heard by a properly appointed ALJ. (*Id.*)  Plaintiff also argues that she has not forfeited this argument by failing to raise it during the administrative proceedings because (a) the Supreme Court has ruled that exhaustion does not apply at the Appeals Council level, and (b) it would have been futile to raise the issue before the

ALJ because the ALJ would have been powerless to decide a constitutional issue such as the validity of his own appointment.  (*Id.*)  Plaintiff also points out that the plaintiff in *Lucia* had not raised this argument during the proceedings before an ALJ and his claims were permitted to be heard, arguing that this supports her argument that exhaustion before the ALJ is not required. (*Id.*)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, in his memorandum of law, Defendant asserts four arguments.  (Dkt. No. 14, at 11-26 [Def.'s Mem. of Law].)  First, Defendant argues that Plaintiff's decision to represent herself at the hearing did not deprive her of a fair hearing.  (*Id.* at 11-14.)  More specifically, Defendant argues that (a) the ALJ had no duty to inform Plaintiff of "the benefits of counsel," and the case that Plaintiff relies on for that argument has been abrogated by the Second Circuit, (b) the notice that Plaintiff received about her right to representation is of the sort that has been found to be sufficient by other courts, including the Second Circuit, (c) this Court has held that suspected borderline intellectual functioning does not invalidate a knowing waiver of representation and, in any event, there is no evidence to support that Plaintiff was unable to knowingly waive her rights because of deficient intellectual functioning, and (d) Plaintiff was not prejudiced by her lack of representation because (i) she has failed to identify any specific evidence that the ALJ did not obtain, (ii) the ALJ gave her an opportunity to discuss whatever she wanted related to her relevant impairments at the hearing and she chose not to mention certain things, and (iii) even if certain subjects were not developed at the hearing, the ALJ considered the medical evidence and questioned her about some of her impairments based on his review of the evidence, including her brain lesion and headaches.  (*Id.*)

Second, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's nonexertional limitations did not significantly limit the occupational base for unskilled sedentary work, arguing in particular that the Court has rejected similar arguments related to reasoning levels in the past, and that Plaintiff's self-reported reading difficulties do not provide a sufficient basis to conclude that the ALJ was required to include those in the RFC or consult a vocational expert. (*Id.* at 15-16.)

Third, Defendant argues that substantial evidence supports the finding that Plaintiff was capable of interacting with others at the level found in the RFC. (*Id.* at 16-18.)  More specifically, Defendant argues that (a) the ALJ reasonably afforded great weight to the opinion from Edward Kamin, Ph.D., and Plaintiff has not challenged the weight afforded to his opinion, and (b) the ALJ was not required to adopt the marked limitation opined by the consultative examiner because (i) the "opinion" from the treating therapist that Plaintiff proffers as support for that limitation is merely a recitation of Plaintiff's own self-reported symptoms and the ALJ found that Plaintiff's allegations were not supported by the record, (ii) the ALJ found that the marked limitation was inconsistent with the evidence showing that Plaintiff could perform a number of social tasks, and (iii) the ALJ noted that the consultative examination was performed while Plaintiff was dealing with a number of situational stressors that skewed her presentation. (*Id.*)

Fourth, Defendant argues that the Court should reject Plaintiff's arguments related to the Appointments Clause because she failed to raise them at any point during the agency proceedings. (*Id.* at 18-26.)  More specifically, Defendant argues that *Lucia* requires that a plaintiff bring a "timely" challenge to the constitutional validity of an ALJ's authority, that courts

have interpreted "timely" to mean during the agency proceedings, and that her failure to bring a challenge during the agency proceedings therefore renders her claim untimely.  (*Id*.)  Defendant argues also that, because a challenge pursuant to the Appointments Clause is non-jurisdictional, it can be forfeited by a failure of the proponent to raise it.  (*Id.*)  Defendant argues that all but two courts across the country have found that waiver applies to Appointment Clause claims, and that the Social Security Administration's own regulations require that issues be raised at the earliest possible time, with a more recent policy expression explicitly stating that *Lucia* challenges must be brought during the agency proceedings in order to be timely.  (*Id.*)  Defendant additionally argues that, as a matter of policy, it would be chaotic and contrary to the goal of judicial efficiency to have to remand thousands of otherwise meritless cases that were decided pre-*Lucia* where no timely challenge had been raised as to the authority of the ALJ.  (*Id.* at 25-26.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.   If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.   If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in Appendix
> 1 of the regulations.   If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering
> vocational factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has
> the residual functional capacity to perform his past work.   Finally, if
> the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.  Under the cases previously discussed, the claimant bears the
> burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### 1.   Whether Remand is Required Based on *Lucia*

 After careful consideration, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 18-26 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission were "officers of the United States" by virtue of their continuing office and significant discretion in carrying out important functions, and thus were subject to the Appointments Clause of the

United States Constitution, which requires that such officers must be appointed by the President, a court of law, or a head of a department. *Lucia*, 138 S.Ct. at 2051-53.  The Supreme Court further stated that, pursuant to its own precedent, "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicated his case' is entitled to relief," and found that Lucia had made such a timely challenge in that "[h]e contested the validity of Judge Elliot's appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Lucia*, 138 S.Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 [1995]).  Here, Defendant does not dispute that ALJs for the Social Security Administration are also "officers" subject to the Appointments Clause, but rather argues that Plaintiff's challenge is not timely because she failed to raise it any point during the agency proceedings.

Although the Second Circuit has not yet ruled on the issue of whether failure to raise a challenge to the constitutional status of a Social Security ALJ during the administrative proceedings constitutes a waiver of that argument in an appeal to a federal court, the courts of this circuit (and, in fact, the vast majority of courts throughout the country) have held that it does constitute a waiver. *Doobay v. Comm'r of Soc. Sec.*, 19-CV-0070, 2020 WL 1031377, at *3 (E.D.N.Y. Mar. 3, 2020); *Kevin F. v. Comm'r of Soc. Sec.*, 18-CV-1454, 2020 WL 247323, at *5-7 (N.D.N.Y. Jan. 16, 2020) (Baxter, M.J.); *McMorris v. Comm'r of Soc. Sec.*, 18-CV-6118, 2019 WL 2897123, at *10-11 (W.D.N.Y. June 26, 2019); *Bonilla-Bukhari v. Berryhill*, 357 F. Supp.3d 341, 350-52 (S.D.N.Y. 2019).  The Court therefore finds that, consistent with this, Plaintiff must have raised her Appointments Clause argument at some point during the agency proceedings related to her applications for benefits in order to be able to raise it now before this

Court.

Plaintiff does not argue that she raised this argument before the Social Security Administration, nor is there any evidence to suggest that she did so. Plaintiff's arguments regarding waiver are based on outlier cases from other districts that conflict with the findings of this district and the other districts within the Second Circuit. Without guidance from the Second Circuit to the contrary, the Court sees no reason to deviate from the well-reasoned cases from district courts within the Second Circuit that have already been decided on this issue. Additionally, Plaintiff's argument that *Lucia* somehow shows that exhaustion is not required is facially meritless because, as noted above, the Supreme Court explicitly noted that Lucia had challenged the validity of the ALJ's appointment "before the Commission," and thus raised the argument during the agency proceedings. *Lucia*, 138 S.Ct. at 2055.

Additionally, although Plaintiff was *pro se* in the proceedings before the ALJ, the record establishes that Plaintiff was not only represented by counsel in her appeal to the Appeals Council, but by the same law firm that now represents her in her current appeal to this Court. (T. 321-22.) The Court therefore finds that there is no undue fairness implications in applying the waiver to Plaintiff arising as a result of her *pro se* status at the hearing that must be addressed in this case; even if Plaintiff would not have thought to challenge the constitutionality of the ALJ's appointment at the hearing, her representative at the Appeals Council level was an attorney who could have reasonably been aware of the law related to the appointments clause, no matter that *Lucia* had not yet been decided at the time of that appeal. *See McMorris*, 2019 WL 2897123, at *11 (finding that, even though the administrative proceedings occurred before *Lucia* was decided, "Plaintiff's representative was certainly on notice that SSA ALJs ostensibly might be

considered inferior officers, given the 40-year evolving history of this doctrine and the necessity

for a proper appointment").  The fact that, pursuant to Second Circuit law, a claimant is not

required to raise issues at the Appeals Council level in order to raise them in an appeal to a

federal court does not change this analysis.  *Sims v. Apfel*, 530 U.S. 103 (2000).  There is

fundamental difference between a challenge to the ALJ's conduct or findings (as was at issue in

*Sims*) and a challenge to the very constitutional authority of the ALJ to preside over a claimant's

application.  The relevant question in this matter is whether the argument was "timely raised,"

which the Social Security Administration subsequently defined as being raised before either the

ALJ or the Appeals Council.  SSR 19-1p.  Therefore, although *Sims* does not, as a general matter

require issues to be raised to the Appeals Council, failure to take the opportunity to raise an

Appointments Clause claim before the Appeals Council (if that is the first viable opportunity to

do so, such as here, where it was the only portion of the agency proceedings at which Plaintiff

was represented by an attorney) certainly impacts whether the argument was timely raised.  In

other words, *Sims* does not act as a "free pass" to escape the timeliness requirement of *Lucia*.

For all of the above reasons, the Court rejects Plaintiff's argument that remand is required

based on the Appointments Clause.  The Court will therefore consider the rest of Plaintiff's

substantive arguments related to the ALJ's decision.

### 2.    Whether Plaintiff Effectively and Knowingly Waived Her Right to Counsel

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 11-14 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

A claimant at a Social Security disability hearing has a statutory and regulatory right to

be represented by counsel if he or she so chooses.  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503,

507 (2d Cir. 2009).  This right can be waived if the claimant is properly informed of it and

knowingly forgoes it.  *Lamay*, 562 F.3d at 507.  The relevant statutes and regulations require that

the Social Security Administration must notify the claimant in writing of her options for

obtaining an attorney to represent him or her at the hearing, and of organizations that provide

legal services free of charge to qualifying claimants.  42 U.S.C. §§ 406(c), 1383(d)(2)(D); 20

C.F.R. § 404.1706.  The ALJ also must ensure at the hearing that the claimant is aware of the

right to have counsel.  *Lamay*, 562 F.3d at 507 (quoting *Robinson v. Sec'y of Health & Human

Servs.*, 733 F.2d 255, 257 [2d Cir. 1984]).  Of note, the Second Circuit has explicitly rejected the

proposition that any further notifications about the benefit of having counsel are required to

afford claimants with their statutory and regulatory right to counsel.  *Lamay*, 562 F.3d at 507-09.

Plaintiff acknowledges in her memorandum of law that various letters provided to her

before the hearing included statements that "[y]ou have the right to be represented at the hearing,

[and] [i]f you are not represented, you Social Security office will give you a list of legal referral

and service organizations," and that "[y]ou may choose to have a representative help you [and . . .

[i]f you decide to have a representative, you should find one quickly so that person can start

preparing your case."  (Dkt. No. 12, at 11-12 [Pl.'s Mem. of Law]; T. 95, 105.)  In fact, the

record contains a two-page document entitled "Your Right to Representation" that details not

only the right to representation, but how a representative can assist a claimant, how an agreement

with a representative would work, and financial considerations of having a representative.  (T.

109-10.)  This document is supplemented by lists of both national organizations of disability

benefits representatives and local organizations that provide free representation to qualifying

-14-

claimants.  (T. 111-13.)  Plaintiff also acknowledges that the ALJ, at the beginning of the

hearing, asked Plaintiff if she had looked into obtaining a representative to help her with her case

(to which Plaintiff responded, "no"), and if she knew that she could have obtained a

representative (to which Plaintiff responded, "yes"); upon asking Plaintiff why she did not look

into obtaining a representative despite knowing that she could, Plaintiff responded that, "I just

figured it might be easier for me to do it."  (T. 42.)  The ALJ then offered to allow Plaintiff to

adjourn the hearing if she had reconsidered her choice to not obtain representation, but Plaintiff

stated that she wanted to proceed with the hearing unrepresented.  (*Id.*)

Based on this evidence, the Court finds that Plaintiff was provided with the notice

required by Second Circuit law.  Specifically, she was informed both in writing and at the

hearing of her right to be represented and was provided with a list of legal organizations that

provide free representation.  As a result, the Court finds that there was no error related to the

provision of notice regarding Plaintiff's right to counsel.  *See Lamay*, 562 F.3d at 509

(concluding that short notices informing her of her right to counsel, a list of organizations that

might be able to represent her, and statements at the hearing by the ALJ that the claimant could

either postpone her hearing to obtain representation or proceed with the hearing unrepresented

were sufficient to meet the duty to inform the claimant of her right to representation).

Plaintiff also argues that, notwithstanding the sufficiency of notice, the ALJ should not

have accepted her waiver because he should have recognized that Plaintiff "might be limited in

her intellectual functioning" and that she had difficulty reading.  (Dkt. No. 12, at 13-14 [Pl.'s

Mem. of Law].)  However, as Defendant argues, the record does not reflect deficits in intellectual

functioning that would have put the ALJ on notice that Plaintiff was unable to understand the

impact of her waiver or to knowingly make that waiver.  As to Plaintiff's implication that she

was unable to read the forms informing her of her rights, Plaintiff testified at the hearing that, if

she was having trouble reading and understanding the information Social Security sent her, she

would either go into the Social Security office to have them help her or she would call her foster

mother "and kind of try and read it to her and have her help me understand it."  (T. 57-58.)  This

testimony shows that, when Plaintiff was required to read something beyond her abilities, she

actively sought assistance from persons who could help her understand.  Additionally, the only

evidence of possible deficient intellectual functioning that Plaintiff cites is the consultative

examiner's evaluation, which, as will be discussed in further detail in Part III.3. of this Decision

and Order, is inconsistent with other evidence; it is in fact inconsistent with an examination

performed by one of Plaintiff's treating sources on the same day as the consultative examination,

in which that source noted that Plaintiff had "average estimated intelligence."  (T. 399.)  The

record also shows that Plaintiff at one point was approved to adopt her two nieces, something

which suggests an ability to not only navigate the legal system, but also to take responsibility for

serious decisions.  (T. 463.)  *See Genito v. Comm'r of Soc. Sec.*, 16-CV-0143, 2017 WL

1318002, at *6 (N.D.N.Y. Apr. 7, 2017) (Suddaby, C.J.) (finding that the evidence, including a

statement by a physician that there were no signs that would preclude the claimant from joint

custody of her child, did not support the claimant's allegations that she was not mentally

competent to waive her right to counsel or to represent herself at the hearing).  As a result, the

evidence does not support that Plaintiff has intelligence deficits that would raise a question as to

whether her waiver of counsel was unknowing or invalid.

　　　　For the above reasons, the Court finds no error in the execution of Plaintiff's waiver of

counsel at the hearing.

### 3. Whether the ALJ Erred in Assessing Plaintiff's Mental RFC

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 16-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As discussed above, the only aspect of the ALJ's RFC that Plaintiff challenges as unsupported is the ALJ's finding that she could relate to and interact with others to the extent necessary to carry out simple tasks. (Dkt. No. 12, at 17-18 [Pl.'s Mem. of Law].) In arguing that she is more limited, Plaintiff points specifically to the consultative examiner's finding that she had a marked limitation in her ability to relate adequately with others, arguing that the ALJ failed to give reasons for not adopting this limitation despite the fact that it was consistent with statements in the consultative examiner's report and in a treatment note from Plaintiff's treating therapist. (*Id*.)

"There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." *Rachael V. v. Comm'r of Soc. Sec.*, 18-CV-1346, 2020 WL 1304076, at *6 (N.D.N.Y. Mar. 19, 2020) (Dancks, M.J.) (quoting *Pellam v. Astrue*, 508 F. App'x 87, 89 [2d Cir. 2013]). "Indeed, an ALJ may properly credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported." *Walker v. Colvin*, 15-CV-0465, 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) (Hummel, M.J.).

On July 16, 2015, consultative examiner Amanda Slowick, Ph.D., opined that Plaintiff had no limitation in her ability to follow and understand simple directions and instructions and to

perform simple tasks independently, a mild limitation in her ability to maintain attention and concentration and to make appropriate decisions, a moderate limitation in her ability to maintain a regular schedule and perform complex tasks independently, a moderate-to-marked limitation in her ability to learn new tasks and deal appropriately with stress, and a marked limitation in her ability to relate adequately with others. (T. 375.) On examination, Dr. Slowick observed that Plaintiff was cooperative with adequate social skills, but had mildly impaired attention and concentration due to distractability, mildly impaired recent and remote memory due to her current stress level, and a limited general fund of information with potential below average intellectual functioning. (T. 373-74.) The ALJ afforded Dr. Slowick's opinion partial weight, relying on it to the extent that it was consistent with the record, but noting that (a) there was nothing in the record as a whole to suggest borderline intellectual functioning or marked limitations in functioning, particularly in light of evidence that she was capable of a wide range of activities, including working as a cashier, managing a household with young children and disabled husband, moving across the country multiple times, and adopting two children through a contested proceeding, and (b) recent treatment was related to parenting and family stress issues rather than any uncontrolled psychiatric systems caused by her mental impairments. (T. 18.)

The ALJ's explanation therefore directly contradicts Plaintiff's assertion that the ALJ failed to provide reasons for declining to adopt the relevant marked limitation; to the contrary, the ALJ's finding was based on (a) the degree of consistency with the record, (b) the nature of the treatment Plaintiff received, and (c) Plaintiff's own reported activities and abilities that the ALJ found to be inconsistent with such a limitation. (T. 18.) A review of the record supports the ALJ's finding that the majority of treatment Plaintiff received was related to helping her cope

with situational stressors related to her daughter's behavioral issues in particular, rather than uncontrolled symptoms of her bipolar disorder. (*See, e.g.*, T. 387, 418, 423, 428, 448, 458, 463, 468, 488, 498, 508.)

The record as a whole indicates that, although Plaintiff has a diagnosis of bipolar disorder, her symptoms are vastly improved when she is compliant with her medication; in fact, the treatment notes show that once Plaintiff was back on her medications, her symptoms such as mood swings and irritability greatly improved to the point that she was able to return for a time to her job as a cashier, where she was able to cope with dealing with rude customers on multiple occasions without physical or verbal outbursts. (T. 396, 413, 423, 444, 448, 453, 458, 463, 483, 488, 493, 498, 503, 508.) The Court notes that Dr. Slowick's examination and opinion were conducted during a period when Plaintiff admittedly was not on any medications for her bipolar disorder and related symptoms. (T. 372, 396-99.) At an examination with Samantha Lewis, N.P., on the same date as Dr. Slowick's examination and opinion, Nurse Lewis noted that Plaintiff had been off her medications since July 2014 because she "did not think that she needed them anymore," and that Plaintiff's past records showed that she "usually has an increase in mood and anger issues when she is off her medications." (T. 396.)

Plaintiff's citation to a statement in a treatment note from therapist Dawn Desorcie, M.S.W., does not support a finding that the ALJ's rejection of Dr. Slowick's marked limitation was unsupported by substantial evidence. First, as Defendant argues, the language Plaintiff relies on is a recitation of her self-reported symptoms as recorded by Ms. Desorcie; they are not observations or opinions of a medical source. (T. 385-86.) The ALJ specifically found that Plaintiff's statements about the intensity, persistence, and limiting effects of her impairments and

symptoms were not entirely consistent with the medical and other evidence for a variety of reasons (including her history of medication non-compliance and contradictory reports of activities of daily living that suggested a higher level of functioning).  (T. 16-17.)  The Court also notes that, as discussed above, this treatment was rendered at a time when Plaintiff was not taking medications for her bipolar disorder, and thus does not represent her level of functioning when receiving appropriate treatment.

Lastly, the ALJ also relied on the opinion from nonexamining review physician Edward Kamin, Ph.D., who opined that Plaintiff was only moderately limited in her abilities to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but was not significantly limited in her abilities to ask simple questions, request assistance, accept instructions, respond appropriately to criticism from supervisors, or maintain socially appropriate behavior.  (T. 74.)  This opinion also supports the ALJ's rejection of Dr. Slowick's marked limitation in interacting with and relating to others.

For all of the above reasons, the Court finds that substantial evidence supports the ALJ's rejection of the marked limitation in relating and interacting opined by Dr. Slowick, and that the ALJ sufficiently articulated the reasons for that rejection.  Remand is not warranted on this basis.

**4.      Whether the ALJ Erred in Failing to Consult a Vocational Expert**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 15-16 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

An ALJ is required to consult a vocational expert where the claimant has "nonexertional limitations that significantly limit the range of work permitted by his exertional limitations."

*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). "A nonexertional impairment "significantly limits" a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala*, 595 F.3d at 411 (internal quotation marks omitted). Notably, "the mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines." *Zabala*, 595 F.3d at 410-11.

As Defendant argues, this Court and others within the Second Circuit have found that the reasoning levels one, two, and three are compatible with a limitation to simple, routine work. *See Haiss v. Berryhill*, 17-CV-8083, 2019 WL 3738624, at *11 (S.D.N.Y. May 15, 2019) (collecting cases); *Race v. Comm'r of Soc. Sec.*, 14-CV-1357, 2016 WL 3511779, at *7 (N.D.N.Y. May 24, 2016) (Carter, M.J.) (collecting cases), *adopted by* 2016 WL 3512217 (June 22, 2016) (Suddaby, C.J.). Because Plaintiff has offered no argument that a non-negligible amount of jobs classified as unskilled simple work would require a reasoning level above three, the Court therefore finds that this does not provide a basis for remand.

Additionally, Plaintiff's argument regarding the general educational development categories related to reading misses the mark because the ALJ did not include any nonexertional limitations specifically related to Plaintiff's work-related reading ability in the RFC, nor has Plaintiff provided any evidence of her limited reading abilities other than her own self-reports at the hearing and to the consultative examiner. Because there is substantial support for the ALJ's decision to not include a reading limitation in the RFC, the Court finds that there was no basis for the ALJ to consider Plaintiff's reading ability when making his findings at Step 5 (beyond what might be inherently implicated by a limitation to "simple" work). Notably, Plaintiff does not cite

-21-

any authority to suggest that "simple" work implicates a certain level of reading ability.

"Courts have repeatedly accepted reliance on the grids where ALJs found that moderate mental limitation had a limited impact on the range of unskilled work available." *Martinez v. Colvin*, 13-CV-7254, 2015 WL 4041988, at *14 (S.D.N.Y. July 2, 2015) (finding substantial support for the ALJ's finding that a vocational expert was not necessary for a limitation to simple, repetitive tasks on a sustained basis" but remanding based on limitations in his use of his left arm). The Court finds that the ALJ's reliance on the Medical-Vocational Guidelines in this case is not legal error. *See Zabala*, 595 F.3d at 411 (finding that use of the Medical-Vocational Guidelines was permissible because the plaintiff's mental condition did not limit his ability to perform tasks such as carrying out simple instructions, dealing with work changes, and responding to supervision); *Webb v. Astrue*, 11-CV-0094, 2012 WL 589660, at *6 (N.D.N.Y. Feb. 22, 2012) (Sharpe, C.J.) (upholding the ALJ's finding that nonexertional limitations including routine daily tasks that are not fast-paced or do not require significant change in pace or location and only occasional contact with people would not significantly limit the range of work he could perform). In particular, although the RFC contains various nonexertional limitations, it overall equates to a finding that Plaintiff can handle the duties associated with simple work and simple tasks. (T. 15.) The Social Security Administration's own regulatory guidance indicates that the basic abilities of unskilled work include (a) understanding, remembering, and carrying out simple instructions, (b) making simple work-related decisions, (c) responding appropriately to supervision, co-workers and usual work situations, and (d) dealing with changes in a routine work setting. SSR96-9p. Because the RFC limitations are essentially limiting Plaintiff to unskilled work and do not suggest an erosion of her ability to perform the

basic abilities of unskilled work, the ALJ did not err in choosing to rely on the Medical-

Vocational Guidelines rather than consulting a vocational expert.

      **ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED**; and it is further

      **ORDERED** that the Commissioner's Decision is **AFFIRMED**; and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 19, 2020
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge